WOLF, J.
Appellant challenges the denial of his Florida Rule of' Criminal Procedure 3.800(b)(2) motion in which he alleged the trial court erred in relying- on the State’s scoresheet which- re-categorized appellant’s victim injury points from the original category of “death” points to the higher-point category of “second-degree murder.” Appellant also challenges his judgment and sentence,' alleging that the trial court lacked the jurisdiction to sentence:him on counts 3 and 5. Because there is no dispute that appellant was originally convicted of second-degree murder, we find no error in assessing points for that offense upon a violation of probation. See Roberts v. State, 644 So.2d 81, 82 (Fla.1994). The State correctly concedes error as to the second issue as appellant' had completed his sentences as to these counts. We, therefore, quash the new sentences as to counts 3 and 5 and remand to the trial court to correct the record in accordance with this opinion.
*1192 On March 24, 1998, appellant pled no contest to 4 counts: (1) second-degree murder; (2) attempted first-degree murder; (3) aggravated battery; and (5) possession of a firearm by a convicted felon. The fourth count was nolle prossed.
A sentencing guidelines scoresheet was filed in 1998 pursuant to the October 1, 1995, Florida Rule of Criminal Procedure 3.991(a) sentencing guidelines scoresheet. The scoresheet noted appellant’s primary offense was second-degree murder, but rather than assigning the 240 victim injury points associated with “second-degree murder” pursuant to the guidelines, the State assigned appellant 120 points for the victim injury “death.” There is nothing in the record before us to indicate why this apparent oversight occurred.
The trial court sentenced appellant on counts 1, 2, 3, and 5 to 12 years’ imprisonment followed by 3 years’ probation; all sentences .were to run concurrently.
On November 25, 2008, appellant admitted to violating his probation. His new sentencing scoresheet, like his first score-sheet, was based off of the 1995 rule 3.991(a) scoresheet. It, too, assigned 120 points to appellant for victim injury points due to “death” rather than “second-degree murder.” The trial court sentenced appellant to 2 years’ imprisonment followed by 3 years’ probation for violating, his probation.
On July 8, 2013, appellant admitted to violating his probation a second time and made an open plea to the court. The State filed a third sentencing guidelines score-sheet; however, this scoresheet was pursuant to the 1994 Florida Rule of Criminal Procedure 3.990(a) sentencing guidelines scoresheet rather than the 1995 rule 3.991(a) scoresheet. Under the 1994 scoresheet, only 60 victim injury points could be assigned for “death” as opposed to the 120 points scored for death in the two prior scoresheets. Rather than assigning the 60 victim injury points for “death,” the State, for the first time, assigned appellant 120 points for victim injury based on “second-degree murder.”
Because the 1994 scoresheet weighed victim injury points differently than the 1995 scoresheet, appellant’s assignment of 120 victim injury points for “second-degree murder” resulted in a higher minimum and maximum sentence than he had scored under the 1995 scoresheet. With the 120 “second-degree murder” victim injury points, appellant scored a minimum sentence of 15.29 years’ imprisonment and a maximum sentence of 25.48 years’ imprisonment.
During appellant’s hearing on his open plea, the trial court asked defense counsel if she had seen the sentencing scoresheet and if she agreed with the numbers in it. Defense counsel noted that appellant’s first 2 scoresheets had indicated 120 points for the victim injury of “death,” whereas the new scoresheet re-categorized appellant’s victim injury points to “second-degree murder.” Defense counsel argued that appellant should have only been assigned victim injury points for “death” because no specific findings had been made by the jury that appellant had been the one who caused the victim’s death. However, counsel noted that she believed the prosecutor had provided case law in good faith which supported the State’s position that it had the authority to change the category of victim injury points assessed to appellant in the thud scoresheet.
The trial court sentenced appellant to 20 years’ imprisonment on counts 1 and 2, and 15 years’ imprisonment on counts 3 and 5 to run concurrent with the sentence on counts 1 and 2.
In determining appellant’s sentence, the trial court stated, “I’m not giving you the most that I can, Mr. Hale. But, then again, *1193 I can’t justify going any less than that. I don’t think I have a reason to depart. Nor do I think I have a reason to reinstate your probation.”
On September 22, 2014, appellant filed a rule 3.800(b)(2) motion to correct a sentencing error. In the motion, appellant alleged the State erred by changing .the category of victim injury points from “death” to “second-degree murder” on the third scoresheet. Appellant additionally contended that the guidelines scoresheet incorrectly listed counts 3 and 5 as additional offenses when they should have been scored as prior record because the court no longer had jurisdiction to impose a sentence on those counts, as appellant had already completed his sentences for those offenses.
The trial court found that the victim injury points were appropriately assessed in the third sentencing guidelines score-sheet, reasoning that appellant was- convicted of second-degree murder and therefore was appropriately scored 120 victim injmy points for “second-degree murder” rather than “death.” The court also noted that the number of points appellant was assigned did not change from the first to the third scoresheet.
We find the trial court correctly ruled on this issue. There are two lines of cases concerning whether points can be adjusted on a sentencing scoresheet upon a finding of violation of probation. The leading case relied on by the State is Roberts, 644 So.2d at 82. There, Roberts’ original scoresheet erroneously lacked his prior convictions. Id. When Roberts was resentenced after violating his probation; the State used a revised scoresheet that included the originally-omitted prior convictions. Id. The supreme court affirmed Roberts’ sentence using the amended scoresheet, reasoning that Roberts had originally “received the benefit of a mistake in his [first] guidelines scoresheet,” and the court could “see no reason to perpetuate the error. Justice is not served by awarding a defendant something to which he is not entitled.” Id.
The leading case supporting appellant’s position- that his victim injury points should not have been re-evaluated upon his violation of probation is Kingsley v. State, 682 So.2d 641 (Fla. 5th DCA 1996). Kingsley was originally allotted 4 points for “slight” victim injury; however, when he violated his probation, his scoresheet was revised to reflect 40 points for “severe” victim injury., Id. The Fifth District reversed and remanded for resentencing with Kingsley’s original assignment of 4 victim injury points, holding that “the fact that points were mistakenly omitted in Roberts distinguishes that case from the instant matter. Here, there was a determination at the original sentencing that the victim only suffered slight injury, and thus, Kingsley was awarded 4 points for that infraction.” Id. (underline emphasis added). See also Aponte v. State, 810 So.2d 1008, 1011 (Fla. 4th DCA 2002) (holding that victim injury points could be assessed for the first time upon appellant's violation of probation where “the trial court - at the original sentencing hearing did. not determine whether the victim injury-points should be assessed.”); Robinson v. State, 985 So.2d 1192, 1193 (Fla. 4th DCA 2008) (noting the trial court “may assess ‘victim injury’ points after the revocation of probation where it did not assess them in the original sentence scoresheet”).
We find that Kingsley differs from the current case because in Kingsley, the Fifth District noted that “there [was] nothing in the record to support” the trial court’s reclassification of Kingsley’s victim injury points from “slight” to “severe,” Kingsley, 682 So.2d at 641 n, 1. “In fact,” noted the court, “the evidence tends to show that the injury was slight.” Id.
Here, on the other hand, there is no dispute that appellant was originally con *1194 victed of second-degree murder. On the record before us, there is nothing to indicate that the original assessment of victim injury points for “death” as opposed to “second-degree murder” was anything more than a simple mistake.
Thus, we decline to adopt appellant’s broad position that once scoresheet points are assessed based on a particular aspect óf a case, that assessment may not be readdressed. We decline to limit'the Roberts decision, which holds that án erroneous scoresheet may be corrected at a defendant’s future sentencing proceedings, only to those situations where the original scoresheet did not address the items that were later reassessed and corrected.
Rather, we find that Kingsley and its progeny stand for the proposition that where there has been a previous determination concerning a disputed factual issue such as the level of victim injury, a score-sheet may not be altered upon a violation of probation.
Here, unlike in Kingsley, the facts support .the increased assignment of victim injury points. - We, therefore, find that here, as in Roberts, appellant should not receive the benefit of a continued perpetuation of a scoresheet error during his sentencing for violation of probation. We, therefore, AFFIRM as to this issue.
As to appellant’s' second issue in which he claims the trial court lacked the jurisdiction to impose a sentence as to counts 3 and 5, we agree. 'We, therefore, REVERSE and REMAND for the sentences on counts 3 and 5 to 'be stricken from the record. Resentencing is not required.
WETHERELL and MARSTILLER, JJ., concur.